Richard Samuel NIGRO, et al.,
Plaintiffs-Appellants,

v.

James G. ASHLEY, et al., Kansas City Area Transportation Authority, Defendants-Respondents.

No. WD 35265.

Missouri Court of Appeals,
Western District.

Dec. 26, 1984.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied March 5, 1985.

As Modified April 2, 1985.

Application for Transfer Sustained April 2, 1985.

Case Retransferred April 22, 1985.

Court of Appeals Opinion Readopted May 14, 1985.

Application to Transfer Denied June 25, 1985.

Thomas Sullivan (argued), Tom J. Helms, Eldon J. Shields, L.D. McDonald, Jr., Kansas City, for plaintiffs-appellants.

L.R. Magee, Kansas City, for respondents Ashley.

James G. Lindquist, Kansas City, for A.C.A.T.A.

Walter J. O'Toole, Jr., Kansas City, for City of Kansas City, Mo.

Before KENNEDY, P.J., and NUGENT and BERREY, JJ.

NUGENT, Judge.

The plaintiffs, partners, doing business as Gregory McGee Company, appeal from a circuit court grant of summary judgment in favor of defendants. The order states that plaintiffs, as a matter of law, have no interest in a tract of land, which is a segment of what is known as the Country Club right-of-way because the parties' common predecessors in title conveyed fee simple title to the disputed tract to defendants' predecessor in title, the Kansas City and Westport Belt Railway. We affirm.

The undisputed facts needed to reach a decision are as follows:

The parties in this case claim title to a tract of land in Kansas City which is a segment of what is commonly known as the Country Club right-of-way. The disputed area, marked "Tract 2" is shown in the following illustration submitted by the parties. The plaintiffs are the undisputed owners of the adjacent and abutting property marked "Tract 1" in the illustration.

75 $\underline{th}$   Street

W
O
R
N
A
L
L

R
O
A
D

Corp.
Warranty
deed

Deed
765409

Tract
2

Tract 1

Deed
765410

In October, 1981, plaintiffs filed their first amended petition for a declaratory judgment. They alleged that the defendants, James G. Ashley, Jr., and Pamela C. Ashley, had attempted to convey to the defendant City of Kansas City and the Kansas City Area Transportation Authority (A.T.A.) the Ashleys' interest in Tract 2, that the Ashleys' had no more than a railroad right-of-way easement that had been abandoned prior to the conveyance and thereby extinguished. Plaintiffs claimed to hold fee simple title to the property and asked that the circuit court declare that plaintiffs' property is free of the easement. The defendant City of Kansas City filed a counterclaim seeking a declaration that it holds the fee simple title to Tract 2 or that it is the holder of a railroad right-of-way easement in the tract.

The history of this case begins in the early twentieth century. The subject property was then owned by three different title holders. Those owners conveyed to plaintiffs' predecessors in title the undisputed ownership of Tract 1. They also conveyed to Kansas City and Westport Belt Railway Co., the defendants' alleged predecessor in title, the interest in Tract 2 now claimed by these defendants. Belt Railway was a standard gauge railroad organized under the applicable corporation statutes of 1889. The resolution of this appeal turns on deciding what was conveyed to the Belt Railway by the early owners of the tract. If we find that the Belt Railway received the fee simple title to Tract 2, that ends the case, because the basis of plaintiffs' claim is that a mere easement which has now been abandoned was granted to the company.

Belt Railway acquired its interest by means of three deeds. On April 16, 1907, by a warranty deed Southwestern Loan and Land Company conveyed to Belt Railway its interest in Tract 2, labeled in our illustration as "corp. warranty deed." The deed states in pertinent part as follows:

CORPORATION WARRANTY DEED

**THIS INDENTURE,** Made on the Sixteenth day of April One Thousand Nine Hundred and seven by and between Southwestern Loan and Land Company of Missouri a corporation duly organized and existing under the laws of the State of Missouri, of the County of Jackson State of Missouri, party of the first part, and Kansas City & Westport Belt Railway Company of the County of Jackson, State of Missouri, party of the second part.

**Witnesseth,** That said party of the first part, in consideration of the sum of Three Hundred twenty ($320.00) DOLLARS, to it in hand paid by the said party of the second part, the receipt of which is hereby acknowledged, does by these presents, GRANT, BARGAIN AND SELL, CONVEY AND CONFIRM, unto the said party of the second part, its successors and assigns, the following described lots, tracts or parcels of land, lying, being and situate in the County of Jackson and State of Missouri, to wit:

. . . .

To have and to hold, The premises aforesaid, with all and singular the rights, privileges, appurtenances and immunities thereto belonging or in any wise appertaining, unto the said party of the second part and unto its successors and assigns forever, the said Southwestern Loan and Land Company of Missouri hereby convenanting that is lawfully seized of and indefeasible estate in fee in the premises herein conveyed; that it has good right to convey the same; that the said premises are free and clear from any encumbrance done or suffered by it or those under whom it claims; and that said Southwestern Loan and Land Company of Missouri. . . .

The second portion of the Tract 2, marked "Deed 765409" on our illustration, was conveyed by Dierks and Sons Lumber Company. The relevant portions of that deed state as follows:

**THIS INDENTURE,** Made on the 12th day of May A.D. One Thousand Nine Hundred and ten by and between the Dierks & Sons Lumber Company a corpo-

ration duly organized under the laws of the State of Missouri, party of the first part and Kansas City and Westport Belt Railway Company, a corporation duly organized under the laws of the State of Missouri . . .

**Witnesseth:** That the said party of the first part, in consideration of the sum of One thousand seven hundred eithty one & 30/100 DOLLARS, to it paid by the said party of the second part, the receipt of which is hereby acknowledged, does by these presents, Grant, bargain and sell unto the said party of the second part, its successors and assigns, the following described Lots, Tracts or Parcels of Land, lying, being and situate in the County of Jackson and State of Missouri to-wit:

. . . .

To have and to hold the premises aforesaid, with all and singular the rights, privileges, appurtenances and immunities thereto belonging or in anywise appertaining, unto the said party of the second part and unto its successors and assigns forever

. . . .

The third conveyance, marked as "Deed 765410", was by a general warranty deed of grantors Louis and Ethyl Hector. The relevant segments provide that:

### GENERAL WARRANTY DEED

**THIS INDENTURE,** Made on the 12 day of May A.D. 1910, by and between Louis Hector, and Ethyl Hector his wife of the County of Jackson in the State of Missouri parties of the first part, and Kansas City and Westport Belt Railway Company, a corporation duly organized under the laws of Missouri . . .

**Witnesseth,** That the parties of the first part, in consideration of One thousand and ninety nine & 96/100 Dollars, to them paid by the said party of the second part the receipt of which is hereby acknowledged, do by these presents, grant, bargain, sell, convey and warrant unto the said party of the second part, and to its successors and assigns forever

the following described lots, tracts or parcels of land situated in the county of Jackson in the State of Missouri to-wit:

. . . .

The chain of title after these initial grants is unclear, but to resolve this dispute, we need not attempt to untangle the twisted chain.

The parties do not dispute that the same three grantors were also plaintiffs' predecessors in title to Tract 1. Copies of the deeds in plaintiffs' chain of title are not in the record. Their claim of title to Tract 1 is set forth in an affidavit which refers to the various conveyances leading to the present holders. The record does show that Southwestern Loan and Land Company's deed to plaintiffs' predecessor, James G. White, conveyed an area encompassing parts of both tracts except the railroad right-of-way earlier granted to the railroad. Plaintiffs' claim rests upon their contention that the common grantors conveyed the fee simple title of Tract 2 to their predecessors, burdened with Belt Railway's easement. Without copies of those deeds shown in the record, we cannot say exactly what was conveyed to plaintiffs' predecessors by these early grantors, so our decision must rest solely on the deeds to defendants' predecessors.

In April, 1983, A.T.A. filed its motion for summary judgment. The City later filed a similar motion for summary judgment, incorporating by reference the allegations set forth in A.T.A.'s motion. A.T.A. alleged that the Ashleys had conveyed their fee simple interest to the Authority, and the City stated that it holds an option to acquire the disputed tract. On June 22, 1983, the parties' motions were sustained by the trial court without benefit of a hearing. That judgment failed to dispose of the City's counterclaim, and the Ashleys had not joined in the motions. Plaintiffs filed a motion for reconsideration of the order and to set aside the judgment. A.T.A. then dismissed its counterclaim, and later the Ashleys joined in the motions for summary judgment.

Plaintiffs then amended their motion for reconsideration adding that newly discovered evidence of a prior case, *Kansas City v. Ashley*, 406 S.W.2d 584 (Mo.1966), should be considered by the circuit court. The plaintiffs asserted that the above case holds that the Ashleys have only a railroad right-of-way easement and is thereby res judicata in the case at hand. Plaintiffs also submitted additional evidence of statements and letters made by attorneys for the City and A.T.A. during the course of that earlier litigation. They argued that those statements and letters were admissions that the Ashleys had only an easement interest in Tract 2.

The court conducted a hearing on the various motions and reaffirmed its grant of summary judgment in favor of all the defendants. The court's order stated that plaintiffs' predecessors in title held fee simple title to Tract 2 and had conveyed the fee simple title and not merely an easement to Belt Railway. Judgment was entered as follows:

> WHEREFORE, IT IS HEREWITH ORDERED, ADJUDGED AND DECREED that the Court summarily finds the issues in favor of Defendant James Ashley, Pamela Ashley, Kansas City Area Transportation Authority, and Kansas City, Missouri, on Plaintiffs' First Amended Petition; that judgment is hereby entered in favor of Defendants James G. Ashley, Jr., Pamela Ashley, Area Transportation Authority, and Kansas City, Missouri, and against all Plaintiffs herein and that the costs are hereby assessed against the Plaintiffs.

Plaintiffs filed a timely notice of appeal.

The plaintiffs raise a number of points on appeal which can be summarized as follows. First, they claim that Belt Railway was not authorized by its corporate charter and by the statutes under which it was organized to hold fee simple title to realty and, therefore, its interest could only have been a railroad right-of-way easement. The plaintiffs further argue that the parties' common grantors conveyed to plaintiffs' predecessors in title a fee simple interest in both Tracts 1 and 2, whereas they conveyed only an easement in Tract 2 to defendants' predecessor. They also contend that the easement itself was abandoned before the Ashleys conveyed their interest to the other defendants. Plaintiffs' next argue that *Kansas City v. Ashley, supra,* is res judicata in this case and that letters and statements made by attorneys for the City and A.T.A. in that litigation are admissions that the Ashleys held only an easement in the property. They also raise a number of points concerning defects in defendants' title after the initial conveyances to Belt Railway.

■ Appellate review of a grant of summary judgment is equivalent to review of a court-tried case and if, as a matter of law, the judgment is sustainable on any theory it must be affirmed. *McCready v. Southard,* 671 S.W.2d 385, 387 (Mo.App. 1984); *Rue v. Helmkampf,* 657 S.W.2d 76, 80 (Mo.App.1983). We must scrutinize the whole record in a light most favorable to the party against whom the judgment was entered, and the burden is on the respondents to show by unassailable proof that no issue of material fact remained and that the respondents are entitled to judgment as a matter of law. *Williams v. MFA Mutual Insurance Company,* 660 S.W.2d 437, 439 (Mo.App.1983).

■ Plaintiffs' first point is that the corporate charter of Belt Railway and the corporation statutes of 1889 under which it was organized did not authorize the railway to hold fee simple title to realty. Whether a standard gauge railway may acquire fee simple title is a well settled question. In *Coates & Hopkins Realty Co. v. Kansas City Terminal Ry. Co.,* 328 Mo. 1118, 43 S.W.2d 817 (1931) (en banc), the court held at 822 that § 4555, R.S.Mo. 1929, authorized every corporation to acquire fee simple title. The court then went on to construe § 4655, R.S.Mo.1929, which pertains only to railroads. It provides in part that railroads can "take and hold such voluntary grants of real estate and other property as shall be made to it to aid in the construction, maintenance and accommoda-

tion of its railroad; but the real estate received by voluntary grant shall be held and used for the purpose of such grant only...." The *Coates* court held that § 4655 did not prevent railroads from acquiring title in fee simple when the property was acquired by bargain and sale for valuable consideration. *Id.* The provisions of §§ 4555 and 4655 construed in *Coates* appear in the statutes of 1889 under which Belt Railway was incorporated. We must conclude, therefore, that Belt was authorized by its incorporating statutes to acquire fee simple title. *See* § 2508 and § 2543, R.S.Mo.1889.

■ Even though the statutes did not themselves prevent Belt Railway from acquiring fee simple title, the grants to it still had to satisfy the requirements of the cases holding that a railway may acquire such title. *Schuermann Enterprises, Inc. v. St. Louis County*, 436 S.W.2d 666 (Mo. 1969), held at 668 that: "Railroads may hold, purchase, or convey the fee in land when the acquisition is by general warranty deed without any restriction on the quantum of title conveyed and for a valuable consideration...." Thus, to convey a fee simple title in land to a railroad, two elements must appear: first, the land must be conveyed for valuable consideration, and, second, no limitation on the quantum of the interest conveyed may appear in the deed by which title is transferred. *State ex rel. State Highway Commission v. Chicago, Burlington and Quincy Railroad Co.*, 539 S.W.2d 760, 763 (Mo.App.1976).

■ Those elements are found in the three conveyances to Belt Railway. Each of the three deeds recites a valuable consideration, and none of the deeds limits the quantum of the estate conveyed to the grantee railway.

■ Plaintiffs also argue that Belt Railway's corporate charter did not authorize it to acquire fee simple title. The articles set forth the railway's purpose as that "of constructing, maintaining and operating a standard gauge railroad for public use in the conveyance of persons and proper-

ty...." The corporate charter authorized the railway to operate a railroad in conformance with the revised statutes of 1889. We have already noted that the relevant statutes did not prevent a railroad from acquiring a fee simple interest so long as certain requirements were met, and they were met in this case.

The whole basis of plaintiffs' claim is that Belt Railway only acquired a railroad right-of-way easement, which has since been abandoned. Since we hold that the railroad was granted a fee simple estate, on this record plaintiffs can have no interest in the property.

■ The plaintiffs raise a number of points concerning defects in defendants' chain of title after the initial conveyances to Belt Railway, but, since they have no interest in the property, they have no standing to raise those points.

■ In a declaratory judgment action the trial court must make a declaration of the rights of the parties that disposes of all the questions concerning the status or legal relations encountered in adjudicating the controversy. *Mayor, Councilmen, etc. v. Dealers Transport Co.*, 343 S.W.2d 40, 43 (Mo.1961) (en banc); *Zaiser v. Miller*, 656 S.W.2d 312, 315 (Mo.App.1983). In finding that the plaintiffs have no interest in the property, the trial court disposed of the controversy between the parties and declared all the rights between the parties involved in this dispute.

■ The trial court's declaration ends the justiciable controversy between the parties. A justiciable controversy exists when an actual controversy exists between parties whose interests are adverse in fact. *City of Jackson v. Heritage Savings and Loan Ass'n*, 639 S.W.2d 142, 144 (Mo.App. 1982). The plaintiffs have no interest, claim or right in the disputed tract and no justiciable controversy exists between these parties beyond that initial determination. Defects in title or occurrences that happened after the initial conveyances to Belt Railway, if any, have no bearing on the dispute in this case.

Plaintiffs also argue, however, that *Kansas City v. Ashley*, 406 S.W.2d 584 (Mo. 1966), holds that the Ashleys, operators of a railroad switching service under contract with Belt Railway, have a railroad right-of-way and is res judicata in this case. The cause of action in the *Ashley* case was different from the one presented here. In the earlier case, Kansas City was attempting to condemn a strip of land already devoted to a public use, that is, operation of a state and federally authorized railroad. The Missouri Supreme Court there held that the city did not have the powers of a sovereign and, therefore, could not condemn property already devoted to a public use. *Id.* at 590. The court stated that "it was admitted" that the city was attempting to condemn a railroad right-of-way held by the defendants, but the court did not specify which party made the admission. Since the case was decided upon defendants' motion to dismiss, one may conclude that in their motion the Ashleys asserted that they were operating a railroad on a railroad right-of-way and the City admitted as much in its response.

An additional issue in that case was whether certain abutting owners had a sufficient interest in the property to object to the city's action. The court held that they did. The plaintiffs here claim the court in *Kansas City v. Ashley, supra,* held that the Ashleys were holders of a railroad right-of-way easement.

■■■■ Plaintiffs are attempting to use collateral estoppel or issue preclusion to establish their case. This is not a case of claim preclusion because a different cause of action was asserted in the earlier case. *American Polled Hereford Ass'n v. City of Kansas City,* 626 S.W.2d 237, 240–41 (Mo.1982). The *American Polled Hereford* case sets forth the requirements for the application of collateral estoppel (issue preclusion) at 241, noting that to prevail on a claim of issue preclusion an appellant must affirmatively answer two questions: First, was the party against whom issue preclusion is asserted a party or in privity with a party to the prior adjudication?

Second, was the specific issue in the appellant's instant case actually litigated and determined in the prior adjudication? The plaintiffs assert that they are in privity with parties to the earlier suit. Even so, the issues decided in the *Ashley* case are not identical with the issue presented here. In *Ashley* the issues were whether the city had the power to condemn an area already devoted to a public use, and whether abutting property owners to a railroad right-of-way could object to a condemnation action. Here we are asked to decide what interest the parties have in a respective piece of property. In the earlier suit, the issue of what interest the Ashleys held was not actually litigated but was admitted.

■■■■ Labeling a person's interest as a "railroad right-of-way" does not mean that the holder has but a mere easement. *Brown v. Weare,* 348 Mo. 135, 152 S.W.2d 649, 654 (1941). In the *Brown* opinion, the court stated that a number of different types of interests may result from a grant or conveyance of a railroad right-of-way. *Id.* The opinion then cites to Eckardt, Work of the Missouri Supreme Court for 1938, *Property* 4 Mo.L.Rev. 419, as a source setting forth the various types of interest. Professor Eckardt in his article lists fee simple absolute as one interest possibly resulting from a grant or conveyance of a railroad right-of-way. *Id.* at 422.

■■■■ We have already cited to several cases holding that a railroad may hold property in fee simple, and the Ashleys' railroad predecessors in title did obtain fee simple title here. *Schuermann Enterprises, Inc. v. St. Louis, supra; Brown v. Weare, supra; Coates & Hopkins Realty Co., supra.* We conclude, therefore, that when the court in *Kansas City v. Ashley, supra,* referred to the Ashleys' having a railroad right-of-way, it did not necessarily mean that the Ashleys had a mere easement. The exact nature of the right-of-way interest was never litigated, explained or decided, and cannot preclude our consid-

eration here. *American Polled Hereford Ass'n v. City of Kansas City, supra.*[1]

The court in the earlier litigation also decided that abutting property owners had a sufficient interest to object to the city's action. Once again the issue of the exact nature of the Ashleys' interest was not actually litigated or decided. The city claimed that the holder of a possibility of reverter does not have a sufficient property interest to contest a condemnation action. *Kansas City v. Ashley, supra,* at 591. The court explained that the abutting owners' interest was not a possibility of reverter but was one where a burden upon their fee, an easement, would be extinguished if the right-of-way easement is used for purposes not contemplated in the original grant. *Id.* at 592. The city did not argue, however, that the Ashleys held fee simple title that would altogether cut off the abutting interests. The court and the city assumed that the Ashleys' interest was merely an easement, but that issue was never presented for and was not necessary to a resolution of the issues in the case. Therefore, the earlier *Ashley* decision does not preclude our determination here.

The plaintiffs also raise several points concerning statements made and letters written by attorneys for the city and the A.T.A. in the earlier suit. They all refer to the Ashleys' holding a mere railroad right-of-way easement. The Ashleys or their privies did not make those statements; they were made by their opponents in the earlier suit. The city is now on the side of the Ashleys in the case at hand. But it was the Ashleys' interest that was conveyed to the city in this case, and they would have to be the source of any admission as to a limitation of their property interest to be used in this case.

The plaintiffs also claim that the attorney for the Ashleys in this case admitted in the summary judgment hearing that the Ashleys held only an easement. The statement quoted by appellants in their brief was only a reference to the Ashleys having a railroad right-of-way. As we have already explained, that term may refer to a fee simple interest.

For the foregoing reasons, we affirm the judgment of the trial court.

All concur.

---

1. In Restatement (Second) of Judgments § 27 comment e, states that an issue is not actually litigated where the issue is raised in an allegation by one party and admitted by the opposing party. That was the case in *Ashley,* where the Ashleys asserted in their motion to dismiss that they had a railroad right-of-way and the city admitted the same in its response.