Dorothy M. MOORE, et al., Plaintiffs,

v.

The UNITED STATES, Defendant.

No. 93–134 L.

United States Court of Federal Claims.

Oct. 3, 2003.

William J. Travis and William C. Dunning, Greensfelder, Hemker & Gale, P.C., St. Louis, Missouri, for plaintiffs.

William J. Shapiro, Susan V. Cook, and Elsie Kappler, U.S. Department of Justice, General Litigation Section, Environment & Natural Resources Division, for defendant.

## OPINION

. BRUGGINK, Judge.

This class action involves a suit by persons seeking compensation for the imposition of an easement for recreational trail use on their land. We previously ruled that the enactment of the Rails–to–Trails Act[1] ("Trails Act") constituted a compensable taking. *Glosemeyer v. United States,* 45 Fed.Cl. 771 (2000).[2] After trial held from November 12 through 22, 2002 in St. Louis, we issued a bench ruling fixing compensation for 13 representative parcels in order to facilitate settlement of the remaining claims. *Moore v. United States,* 54 Fed.Cl. 747 (2002). On August 15, 2003, the parties submitted a stipulation on the amount of just compensation and interest as to 280 additional claims out of the 298 claims involved in this lawsuit. Pending is plaintiffs' motion for partial summary judgment as to five of the remaining unsettled claims,[3] and defendant's cross-motion for partial summary judgment as to seven remaining claims.[4] A total of nine claims are at issue. Also pending is plaintiffs' motion to strike certain evidence from defendant's motion.[5] Oral argument was

---

1. Pub.L. 98–11, 97 Stat. 48, amending the National Trails System Act, Pub.L. 90–543, 82 Stat. 919 (codified, as amended, at 16 U.S.C. § 1241 et seq. (Supp. II 1996)).

2. *Glosemeyer* previously was consolidated with *Moore.* In *Glosemeyer,* we found the uncontested facts established that the railroad easements would have been treated as abandoned under Missouri law, and thus extinguished, but for the application of the Trails Act. *Glosemeyer,* 45 Fed. Cl. at 777. Our decision in *Glosemeyer* unconsolidated the cases. *Id.* at 782.

3. Claim Nos. 6, 34, 73, 137, and 152. Claim No. 73 is no longer disputed by defendant. The parties agree to the size, location, and ownership of Claim No. 6, but dispute the exact amount of

compensation. That issue will be addressed at a later stage of the proceeding. In accordance with the framework agreed upon by the parties, no value determinations as to any claims will be made at this stage of litigation.

4. Claim Nos. 34, 61, 62, 63, 65, 137, and 152.

5. Plaintiffs asks us to strike all evidence submitted by the government in its motion for partial summary judgment challenging the nature of the original interest conveyed to the Railroad on the grounds that the challenge is untimely. However, the orders referenced in plaintiffs' argument did not prevent defendant from later objecting to title based on information discovered outside an entry of appearance itself. Plaintiffs' motion is therefore denied.

held on September 24, 2003. For reasons set out below, plaintiffs' motion for partial summary judgment is denied, defendant's motion for partial summary judgment is granted, and the motion to strike is denied.

## I. *Claim No. 34*

Claim No. 34 is brought by Arlie and Patricia Reinwald with respect to land allegedly owned by them bordering the Katy Trail. Defendant challenges both the Reinwalds' fee ownership of the property and the extent to which the property abuts the Katy Trail. On November 4, 1977, the Reinwalds recorded a quitclaim deed from the Missouri–Kansas–Texas Railroad ("Railroad") by which the Reinwalds acquired all of the Railroad's interest in the land relevant to this claim.[6] The dispute is over the nature of the Railroad's interest. Plaintiffs claim that the Railroad held fee title to the relevant property and passed such title on to them while defendant asserts that the Railroad held, and thus could only convey, an easement.

The Railroad acquired its interest in 1892. In that year, Mr. and Mrs. Matson conveyed to the Railroad a right-of-way corridor interest in a 100 foot wide strip of land which later became a segment of the Katy Trail ("corridor deed"). The parties agree that this constituted only an easement. On the same day, in a separate deed, the Matsons also conveyed an interest in a plot of land adjacent to the railroad easement for use by the Railroad as a depot grounds and yard room ("depot deed"). All (or a portion) of the Railroad's interest in the depot grounds was then conveyed to the Reinwalds by the quitclaim deed recorded in 1977. Defendant argues that by comparing the language in the 1892 corridor deed with the language in the depot deed it is clear that both were intended only to create easements.

In the corridor deed, for the stated consideration of one dollar, the Matsons agreed to "grant, bargain and sell" to the Railroad "[a] strip, belt or piece of land one hundred (100) feet in width." The following habendum clause then provides, "to have and to hold the premises hereby conveyed, with all rights, privileges and appurtenances thereby belong-

ing, or in anywise appertaining, unto the said [Railroad] its successors and assigns, forever for its right of way."

The depot deed, executed on the same day as the corridor deed, contains a map of the subject depot grounds and "grant[s], bargain[s] and sell[s]" to the Railroad, its successors and assigns, a "tract or parcel of land" further described as a "strip belt or piece of land" comprising the depot grounds. The habendum clause states, "To have and to hold, the premises hereby conveyed, with all the rights privileges and appurtenances thereto belonging or in anywise appertaining unto the said [Railroad] its successors or assigns forever, for its depot grounds and yardroom." Like the corridor deed, the recited consideration is one dollar.

 Missouri courts have long favored interpreting grants to railroad companies as easements. *See, e.g., Brown v. Weare,* 348 Mo. 135, 152 S.W.2d 649 (1941); *Chouteau v. Mo. Pac. R.R. Co.,* 122 Mo. 375, 22 S.W. 458 (1893); *Jordan v. Stallings,* 911 S.W.2d 653, 658 (Mo.Ct.App.1995). In order for a deed to convey fee interest to a railroad the language in the deed must be clear. In *Nigro v. Ashley,* 690 S.W.2d 410, 417 (Mo.Ct.App. 1984), for example, the Missouri Court of Appeals held that to convey fee simple interest in a parcel of land to a railroad, the land must be conveyed for valuable consideration and contain no limitation on the quantum of interest obtained in the deed.

 *Brown v. Weare* is particularly instructive in the application of this rule. That case involved an action to quiet title to land consisting of both a 100 foot wide strip used as a right-of-way and an adjoining parcel used as a station grounds. Only title to the station grounds was in dispute. *Brown,* 152 S.W.2d at 652. The original deed conveying interest to the railroad recited a consideration of one dollar and granted both the 100 foot wide right-of-way as well as a parcel of adjoining land to be used as a station grounds "so long as the same shall be used for the construction, use and occupation of said railroad company, their successors and

---

6. The Railroad did, however, attempt to reserve all oil, gas, and other mineral rights.

assigns." *Id.* The court noted that a Missouri statute, enacted in 1879, granted railroads the power "to take and hold voluntary grants of real estate" for railroad purposes only. *Id.* at 653. Relying on *Coates & Hopkins Realty Co. v. Kansas City Terminal Ry. Co.*, 328 Mo. 1118, 43 S.W.2d 817 (Mo.1931), the court concluded that the term "voluntary" in the statute meant a conveyance without valuable consideration. *Id.* The court concluded that a grant for one dollar did not constitute valuable consideration, and therefore, the deed at issue was a voluntary grant. That fact, independent of the fact that the deed itself contained language possibly limiting the nature of the interest granted, was sufficient for finding that the railroad only held an easement in the station grounds. *See id.* at 654; *see also G.M. Morris Boat Co. v. Bishop*, 631 S.W.2d 84, 87 (Mo.Ct.App. 1982) ("If there was no valuable consideration for the deed . . . it created an easement even if it purported to convey a fee simple interest.").

We take the rule developed in *Brown*, and later expounded in *Nigro*, as requiring us to find that the Railroad held only an easement if the deed failed to recite valuable consideration *or* if it contained language limiting the nature of the interest granted. While the depot deed quoted above does not contain "so long as" language limiting the purposes of the land conveyed as in *Brown*, any ambiguity in the nature of the conveyance [7] is settled by the lack of valuable consideration. The depot deed recites a consideration of one dollar, which was found in *Brown* to be inadequate consideration to convey fee title to a railroad company. We therefore find that

the Railroad was granted only an easement in the property at issue in the depot deed, and that consequently, the Reinwalds could only hold an easement in the relevant land. As only the holders of an easement abutting the railroad corridor, the right-of-way would not have reverted to the Reinwalds by operation of Missouri law, but for the Trails Act.

In view of this determination it is unnecessary to address defendant's alternate argument that the railroad corridor frontage is shorter than the Reinwalds assert.[8] Their claim, therefore, must fail.

## II. *Claim Nos. 137 and 152*

Claim Nos. 137 and 152 both involve parcels of land abutting the Katy Trail allegedly acquired by Cooperative Association No. 130 ("Cooperative") from the Railroad by two quitclaim deeds both executed on March 12, 1987. The parcels at issue are apparently both former railroad depot/station grounds. Defendant argues that the original deed, referenced in the 1987 deed, conveying to the Cooperative the Railroad's interest in the land at issue in Claim No. 137 only granted the Railroad an easement in a 100 foot wide strip of land, without mentioning anything about the depot grounds. Defendant therefore argues that because the Railroad deed is silent about the depot grounds, the court should conclude that the Railroad could only have acquired its interest in the depot grounds at issue in Claim No. 137 by adverse possession or prescription. Similarly, defendant also argues that no deed actually records a grant of any interest in the property at issue in Claim No. 152 to the Railroad, and

---

7. We note that the depot deed does contain language which potentially could be interpreted as limiting its purpose: "for its depot grounds and yardroom." *Cf. Brown*, 152 S.W.2d at 654 ("[O]nly an easement may be and was acquired by voluntary grant for station grounds, the same as for a right of way.").

8. Defendant also argues that even if we hold that the depot deed did convey fee interest to the Railroad, the Reinwalds are nevertheless only due compensation for a segment running 368 feet, rather than the 552 feet claimed by plaintiffs, because 184 feet are separated from the Katy Trail by a 10 foot strip not deeded to the Reinwalds by the 1977 quitclaim deed. Defendant points to language in the 1977 quitclaim

deed describing the property conveyed to the Reinwalds as deviating west of the railroad corridor by ten feet for a length of 184 feet, apparently to insure a ten foot buffer on the western side of ICC track 25. Plaintiffs counter that the track ran ten feet east of the parcel and that the right-of-way for the Railroad's easement necessarily included the ten foot strip of land for safety and rail line operations. Plaintiffs offer a U.S. Survey map of the area conducted after the establishment of the Katy Trail which shows the trail abutting the Reinwald's property for its full length, with the 10 foot segment as part of the trail. Because we find that the Reinwalds hold only an easement, it is unnecessary to resolve this dispute.

that the court should therefore decide that the Railroad could only have acquired any interest in the property through adverse possession or prescription.

Defendant argues that Missouri law provides that where there is no recorded instrument, a railroad may only acquire an easement by prescription and not fee title by way of adverse possession. Therefore, when the Railroad quitclaimed its interest in the parcels at issue to the Cooperative, defendant argues, the Railroad could have only conveyed easements. If that is the case, the railroad corridor would not have reverted back to the Cooperative even in the absence of the Trails Act.

■ At oral argument, plaintiffs conceded that no deeds could be found establishing the Cooperative's interest in the properties at issue. Defendant also appears correct in its assertion that under Missouri law, in the absence of a deed clearly conveying fee interest to a railroad, it is appropriate only to find that the Railroad held an easement by prescription limited by the Railroad's use of the relevant property. *See Kan. City Area Transp. Authority v. 4550 Main Assoc., Inc.,* 742 S.W.2d 182, 185–85 (Mo.Ct.App.1986). To find otherwise would be inconsistent with the rule that conveyance of fee interest to a railroad will not be found absent evidence of valuable consideration and proof that the deed lacked any limitation on use. *See Brown,* 152 S.W.2d at 654–55; *Nigro,* 690 S.W.2d at 417. Plaintiffs have offered no such evidence and we therefore find no genuine issue of material fact as to whether the Cooperative held fee title rather than easements. As an easement holder, the Cooperative did not hold a reversionary interest in the right-of-way which would have reverted to the abutting fee owners absent passage of the Trails Act. Its claims, therefore, must also fail.

III. *Claim Nos. 61, 62, 63, and 65*

■ Claim Nos. 61, 62, 63, and 65 are brought by John and Frances Yahn, owners of a number of parcels of land located in St. Charles, Missouri along the Mississippi River.[9] The Yahn properties are separated from the Railroad corridor by a public road. Defendant argues that summary judgment is proper on all of these claims because none of the Yahn properties abut the railroad corridor, and therefore, the Yahns could not claim ownership to the lands affected by the Trails Act.

The tax assessor's map attached as an exhibit to defendant's motion for partial summary judgment shows that the Yahn properties are separated from the railroad corridor by a public road. At the turn of the century, the Yahn properties and the property across the street were part of a larger parcel conveyed as a whole to Henry and Catherine Nau. In 1892, Henry Nau conveyed a corridor to the Railroad for valuable consideration.[10] In 1915, Nau conveyed the property to Sophia Wehmeyer. Although there appears to be a gap in the record, a 1962 deed records a conveyance of the land to the City of St. Charles. That deed references the 1915 Nau–Wehmeyer deed and also excepts the Railroad's right-of-way and the "county road."

The Yahns allegedly acquired the property at issue in Claim No. 63 from the City of St. Charles by deed in 1971, and allegedly acquired the property at issue in Claim Nos. 61 and 62 from the city through a 1975 deed. The Yahns allegedly acquired the property at issue in Claim No. 65 by quitclaim in 1985 from the heirs of Norbert Kisker. The descriptions of all four properties mark their western boundaries as the "county road." While all four border the road along the west, none of the properties abut the railroad corridor. It therefore appears from the property records that the Yahns only hold fee title up to the county road and not across it to the railroad corridor. Plaintiffs candidly admit that they are "unable to produce evidence to contradict the evidence provided

---

9. Hereinafter collectively referred to as the "Yahn properties."

10. It is unclear whether the right-of-way conveyed to the Railroad was an easement or in fee

simple. However, because we find that the Yahns would have no interest in the corridor even if it was an easement, we find it unnecessary to resolve that issue here.

by the government." They therefore do not hold any interest in the land underlying the railroad easement. We therefore find that summary judgment for defendant is appropriate as to Claim Nos. 61, 62, 63, and 65.

## CONCLUSION

Defendant's motion for partial summary judgment is granted, and plaintiffs' motion for partial summary judgment is denied. Plaintiffs' motion to strike is likewise denied. Accordingly, defendant is entitled to summary judgment dismissing Claim Nos. 34, 137, 152, 61, 62, 63, and 65.